**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| T-REX PROPERTY AB, | ) | |
| | ) | |
| | ) | Case No.  1:16-CV-05667 |
| Plaintiff, | ) | |
| | ) | Honorable Virginia M. Kendall |
| v. | ) | |
| | ) | |
| ADAPTIVE MICRO SYSTEMS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ADAPTIVE MICRO SYSTEMS, LLC'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO STAY PENDING *INTER PARTES* REVIEW AND**
**<u>COVERED BUSINESS METHOD REVIEW OF THE PATENTS-IN-SUIT</u>**

# TABLE OF CONTENTS

I.    THE ASSERTED PATENTS—THE SUBJECT OF 58 OTHER LAWSUITS—
      HAVE BEEN SUBMITTED TO THE PATENT OFFICE BY THIRD PARTY
      BROADSIGN FOR IPR AND CBM REVIEW ...................................................................2

II.   COURTS IN THE NORTHERN DISTRICT OF ILLINOIS ROUTINELY STAY
      LITIGATION PENDING PATENT OFFICE REVIEW ....................................................4

      A.    A Stay Would Simplify the Issues as the Petitions Cover All Asserted
            Claims ...............................................................................................................5

      B.    A Stay Would Reduce the Burden and Expense of Litigation on the Parties
            and Court............................................................................................................7

      C.    A Stay Will Not Unduly Prejudice or Disadvantage T-Rex, a Non-
            Practicing Entity that Waited Eight Years to Sue ..................................................8

III.  CONCLUSION..............................................................................................................11

## INTRODUCTION

This motion comes from a scenario common in patent litigation today: Plaintiff T-Rex Property AB ("T-Rex") is a non-practicing entity that has filed at least five dozen lawsuits asserting one or more of the same set of three patents. Adaptive Micro Systems, LLC ("Adaptive"), defendant in this one of the many T-Rex cases, seeks a stay of the case in its entirety because all of the claims T-Rex has asserted against Adaptive have been challenged in the United States Patent Office ("PTO"). Under the standard applied by this Court in *Trading Technologies International, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2016 WL 2622301 (N.D. Ill. May 9, 2016)—and often applied by other courts within this district—every factor favors a stay in this case:

- A stay will simplify the issues; every asserted claim is now before the PTO on review.

- The litigation has just begun; remaining events include all discovery other than initial contentions, all claim construction, all expert work, dispositive motions, and trial.

- T-Rex will suffer neither prejudice nor tactical disadvantage from a stay; T-Rex is a non-practicing entity with no products, the parties are not competitors, T-Rex sought no preliminary injunction, and T-Rex waited eight years or more before asserting these patents against Adaptive.

- A stay will reduce the burden of litigation on the parties and the Court; the asserted claims may disappear entirely or emerge from the PTO altered or reduced in scope.

As Adaptive previewed at the September 26, 2016 Rule 16 conference with the Court, when only one of the three patents-in-suit had then been challenged but the remaining two challenges were expected, Adaptive now respectfully moves this Court to stay this case pending final written decisions on two petitions for *inter partes* review ("IPR") and one petition for covered business method review ("CBMR") challenging the validity of the patents-in-suit before the United States Patent Trial and Appeal Board ("PTAB"). Adaptive further moves this Court

1

for a stay of discovery under Federal Rule of Civil Procedure 26(c) to preserve the chance to

avoid incurring substantial discovery expenses unnecessarily.[1]

Just as non-practicing entities like T-Rex benefit from reusing work product from one

case in another case where the issues are the same, the memorandum that follows incorporates

much from the brief filed by another defendant, in a different case pending in this district, facing

the same strategy, and the same three patents, T-Rex is asserting against Adaptive here.  *See T-*

*Rex Property AB v. ContextMedia, Inc. et al.*, Case No. 1:16-cv-04826 (N.D. Ill. Apr. 29, 2016)

(Lefkow, J.), ECF No. 39.

**ARGUMENT**

**I.     THE ASSERTED PATENTS—THE SUBJECT OF 58 OTHER LAWSUITS—
HAVE BEEN SUBMITTED TO THE PATENT OFFICE BY THIRD PARTY
BROADSIGN FOR IPR AND CBM REVIEW.**

T-Rex is a non-practicing entity that has filed at least 58 other lawsuits alleging

infringement of U.S. Patent Nos. RE39,470 (the "'470 Patent"), 7,382,334 (the "'334 Patent"), or

6,430,603 (the "'603 Patent") (collectively, the "Asserted Patents"), which are drawn generally to

a network of digital advertising displays.  Recently, in an attempt to defend itself and its

customers against T-Rex's nuisance suits, BroadSign International LLC ("BroadSign") (a digital

signage software platform provider) filed a declaratory judgment action seeking a finding of non-

infringement.  (*See* Hanson Decl., Ex. D, Compl. ¶ 15, *Broadsign Int'l, LLC v. T-Rex Prop. AB*,

No. 16CV4586-LTS-HBP (S.D.N.Y. June 16, 2016) (referencing "lawsuits against BroadSign's

customers and T-Rex's litigious business model and conduct").)  In addition, BroadSign filed two

related IPRs and one CBMR challenging the validity of the patents-in-suit.  (*See* Hanson Decl.,

Ex. A, Petition for *Inter Partes* Review, *Broadsign Int'l, LLC v. T-Rex Prop. AB*, IPR2016-01869

---

[1] On November 8, 2016, the parties met and conferred by phone in good faith regarding a stay of the case and
discovery pending resolution of the IPR and CBMR proceedings, but they were unable to reach an agreement.  (*See*
Declaration of David G. Hanson, dated November 11, 2016 [hereinafter "Hanson Decl."], ¶ 17.)

(PTAB Sept. 24, 2016) [hereinafter "IPR2016-01869"] (challenging validity of the '470 patent); *id.*, Ex. B, Petition for *Inter Partes* Review, *Broadsign Int'l, LLC v. T-Rex Prop. AB*, IPR2017-00006 (PTAB Oct. 6, 2016) [hereinafter "IPR2017-00006"] (challenging validity of the '334 patent); *id.*, Ex. C, Petition for Covered Business Method Review, *Broadsign Int'l, LLC v. T-Rex Prop. AB*, CBM2017-00008 (PTAB Oct. 28, 2016) [hereinafter "CBM2017-00008"] (challenging validity of the '603 patent).)

IPRs and CBMRs are streamlined proceedings at the PTAB that will determine the validity and scope of the patents. *See* 35 U.S.C. §§ 311–19; Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18, 125 Stat. 284, 329–31 (2011) [hereinafter "AIA § 18"]. The benefits of staying a case pending IPR or CBMR "are well known" as it "allows an expert panel to evaluate whether claims are patentable" and the proceedings are "designed to create 'a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.'" *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *1 (N.D. Ill. May 29, 2014) (quoting 77 Fed. Reg. 48679, 48680 (Aug. 14, 2012)) (granting stay in view of IPR petitions); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2016 WL 2622301, at *4 (N.D. Ill. May 9, 2016) (Kendall, J.), *aff'd sub nom.*, *Trading Techs. Int'l, Inc. v. Rosenthal Collins Grp., LLC*, No. 2016-2223, 2016 WL 5899197 (Fed. Cir. Oct. 11, 2016) (granting stay in view of CBMRs). That stays are favored pending petitions for IPR and CBMR is not surprising in view of the institution rate for such proceedings. For example, from fiscal year 2013 to fiscal year 2015, the PTAB instituted 70–87% of IPRs and 68–82% of CBMRs. (*See* Hanson Decl., Ex. E, *AIA Progress*.)

Patent Office reviews take place on a predictable, quick schedule. PTAB will institute review within three months from the patent owner's response to the petition (or six months from

3

the date of the notice indicating a filing date was accorded to the petition) if the IPR petitioner

has a "reasonable likelihood" of prevailing, or the CBMR petitioner supports that "more likely

than not that at least one" of the challenged claims is unpatentable. *See* 35 U.S.C. §§ 314(a),

324(a); 37 C.F.R. § 42.300 ("[CBMR] is a trial subject to . . . the post-grant review procedures. .

. ."). The PTAB must then issue a final written decision on unpatentability within one year of

instituting review.[2] *See* 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.300. Accordingly, the PTAB is

expected to decide whether to institute the reviews by no later than April 2017 for the IPRs and

early May 2017 for the CBMR. (*See* Hanson Decl., Ex. A–C.) If instituted, final written

decisions in the reviews are expected in the April to May 2018 timeframe.

## II. COURTS IN THE NORTHERN DISTRICT OF ILLINOIS ROUTINELY STAY LITIGATION PENDING PATENT OFFICE REVIEW.

The vast majority of courts in the Northern District of Illinois stay litigation pending final

written decisions in IPRs or CBMRs.[3] Courts have the authority to stay, in their discretion, an

action pending Patent Office review. *Black & Decker Inc. v. Positec USA, Inc.*, No. 13 C 3075,

2013 WL 5718460, at *1 (N.D. Ill. Oct. 1, 2013). In determining whether to grant a stay pending

an IPR or CBMR, courts consider whether the stay will: (1) "simplify the issues in question and

streamline the trial," (2) "unduly prejudice or tactically disadvantage the nonmoving party," and

(3) "reduce the burden of litigation on the parties and on the court." *Ignite*, 2014 WL 2505166,

at *2; AIA § 18(b)(1); *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1309 (Fed. Cir.

2014). In determining whether to grant a stay pending a CBMR, the Court also considers

---

[2] Upon a showing of good cause, the decision may be extended to eighteen months. However, Adaptive is not aware of any IPR (or CBMR) PTAB proceeding finding the requisite "good cause" and granting such an extension.

[3] *See, e.g.*, *Trading Techs.*, 2016 WL 2622301, at *7; *Ignite*, 2014 WL 2505166, at *4; *Black & Decker*, 2013 WL 5718460, at *3; (*see also* Hanson Decl., Ex. I, *Arch Dev. Corp. v. Genentech, Inc.*, No. 1:15-cv-06597 (N.D. Ill. Sept. 6, 2016); *id.*, Ex. J, *1474791 Ontario Ltd. v. Allergan, Inc.*, No. 1:15-cv-03372 (N.D. Ill. Dec. 18, 2015); *id.*, Ex. K, *Oil-Dri Corp. v. Nestle Purina Petcare Co.*, No. 15-cv-1067, slip op. at 3 (N.D. Ill. May 5, 2015); *id.*, Ex. L, *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 C 3618, slip op. at 1 (N.D. Ill. Feb. 11, 2015); *id.*, Ex. M, *ComplementSoft, LLC v. SAS Inst. Inc.*, No. 1:12-cv-7372 (N.D. Ill. May 8, 2013)).

"whether discovery is complete and whether a trial date has been set," which factors overlap

considerably with the third factor of reducing the burden of litigation. *See* AIA § 18(b)(1);

*VirtualAgility*, 759 F.3d at 1309.

### A. A Stay Would Simplify the Issues because the Petitions Cover All Asserted Claims.

A stay of the litigation in this case pending final written decisions from the PTAB would

significantly simplify the issues, if any remained, and streamline any trial because *all* of the

asserted claims are being challenged in BroadSign's IPR and CBMR petitions. (*See* ECF No. 1,

Compl., at ¶¶ 46–47, 54–55, and 62 (asserting claims 25 and 26 of the '470 patent, claims 22 and

23 of the '334 patent, and claims 42 and 43 of the '603 patent); Hanson Decl., Ex. A,

IPR2016-01869 (challenging claims 1–3, 5–9, 12–14, 17–21, and 24–26 of the '470 patent); *id.*,

Ex. B, IPR2017-00006 (challenging all claims of the '334 patent); *id. Ex.* C, CBM2017-00008

(challenging claims 1, 11–13, 42–43, and 48–74 of the '603 patent).) As the Federal Circuit

stated in *VirtualAgility*, potential review of "all asserted claims of the . . . asserted patent[s]" is

"significant" and weighs heavily in favor of a stay because such review "could dispose of the

entire litigation: the ultimate simplification of issues." *VirtualAgility*, 759 F.3d at 1314; *see also*

*Ignite*, 2014 WL 2505166, at *4 ("PMI's petition . . . challenges all of the '442 patent's

claims. . . . If the USPTO cancels all or some of the asserted claims, then the issue of

infringement for those claims would no longer exist."); (Hanson Decl., Ex. H, *Rosetta-Wireless*,

slip op. at 5 (Lefkow, J.) ("[S]taying a case pending IPR allows an expert panel to evaluate

whether claims are patentable. This allows for the possibility that the case will be resolved in

part or in whole. . . .").

The relevant question is "whether review would simplify the issues in question, not

whether it could eliminate every issue in the case." *Black & Decker*, 2013 WL 5718460, at *2.

Accordingly, even if an IPR or CBMR is not instituted on every asserted claim, institution of an IPR or CBMR on any claim would still weigh heavily in favor of a stay because the review of any instituted claim(s) would result in "persuasive reasoning that they can use to resolve any issues that remain." (Hanson Decl., Ex. H, *Rosetta-Wireless*, slip op. at 5); *see also* (*id.,* Ex. G, *Kolcraft*, slip op. at 3 ("The fact that IPR is pending for only five of the seven patents at issue does not convince the Court that a stay is unwarranted. . . . [The] PTAB's analysis and review of prior art references . . . may inform this Court's consideration of the [other patents] and help simplify and streamline the case.")); *Trading Techs.*, 2016 WL 2622301, at *3 ("The benefits of a stay certainly exist where all of the claims are under review, and would even exist if only *some* of the litigated claims were undergoing review."). And that the petitions have not yet been granted does not weigh against granting a stay at this early stage of litigation because the PTAB will quickly decide whether to proceed with the reviews, *i.e.*, within six short months. *See Ignite*, 2014 WL 2505166, at *4 ("Ignite's concern that the stay will simply delay the litigation, because IPR may not be granted at all or granted on the claims relevant to this litigation, is not lost on this court. However . . . the timeframe the USPTO must decide whether to proceed with IPR is 'fairly short', or six months."); (Hanson Decl, Ex. H, *Rosetta-wireless*, slip op. at 2 (granting stay in view of pending IPR petitions); Ex. G, *Kolcraft*, slip op. at 1 (same).)

IPRs and CBMRs frequently lead to findings of invalidity. As of September 30, 2016, 85% of IPRs that have reached a final written decision found all (69%) or some (16%) of the instituted claims unpatentable. (*See* Hanson Decl., Ex. F, *PTAB Statistics* at 10); *Ignite*, 2014 WL 2505166, at *4 ("Based on past USPTO statistics, there is an 82% probability that the USPTO will institute a review of PMI's petition, and a more than 92% likelihood that one or more of the [claims] will be amended or cancelled."). Similarly, 98% of CMBRs that reached a

6

final written decision found all (82%) or some (16%) of the instituted claims unpatentable. (*See* Hanson Decl., Ex. F, at 11); *Trading Techs.*, 2016 WL 2622301, at *3 ("a significant majority of CBM reviews lead to findings of unpatentability").

**B.** **A Stay Would Reduce the Burden and Expense of Litigation on the Parties and Court.**

Discovery in this case is in the earliest stages. No depositions have taken place or been noticed. (Hanson Decl. ¶ 16.) The only documents produced so far are those that T-Rex produced with its initial disclosures, regarding "communications to and from the [PTO] for the patents-in-suit" and "ownership and the right to enforce the patents-in-suit." (*Id.*) The parties' final contentions are not due for about four months. (*See* ECF Nos. 26, 27, Scheduling Order.) Initial fact discovery does not close for at least six months. (*See* ECF No. 26.) And a trial date has not been set. (*See id.*) Moreover, Adaptive has moved with reasonable speed for the requested stay—the last of the Broadsign challenges was filed only two weeks ago. (*See* Hanson Decl., Ex. C.)

The fact that little to no discovery has occurred weighs heavily in favor of granting a stay. Courts have regularly granted stays pending IPRs and CBMRs at even later stages of litigation. See *VirtualAgility*, 759 F.3d at 1317 (reversing denial of stay pending CBMR and noting where "eight months of fact discovery [remained], the joint claim construction statements had yet to be filed, and jury selection was a year away. . . . [litigation] was still at its infancy, which favors granting the stay"); *Cascades Comput. Innovation, LLC v. SK hynix Inc.*, No. 11 C 04356, 2012 WL 2086469, at *2 (N.D. Ill. May 25, 2012) (granting stay pending *inter partes* reexamination where "the parties have only exchanged initial disclosures, initial contentions, and first rounds of written discovery"). "Without a stay, simultaneous proceedings present substantial risks that the parties and court will expend resources unnecessarily. . . .

7

engage[] in unnecessary discovery. . . . [and] expend judicial resources on claim construction, to evaluate and rule on dispositive motions, and to conduct a trial, for infringement claims on narrowed patents. Such a result would render all of this work unnecessary."[4] *Ignite*, 2014 WL 2505166, at *4; *see also Black & Decker*, 2013 WL 5718460, at *1 ("[A] stay at this early stage of the litigation could significantly limit litigation expenses and streamline the proceedings. . . .").

As discussed in Section II.A, a ruling by the PTAB on any (or all) of the asserted claims will either eliminate the case or simplify any remaining issues. Any guidance from the PTAB on the asserted claims will significantly reduce the costs and burden of litigation. *See Black & Decker*, 2013 WL 5718460, at *1. It will also avoid wasting judicial resources for "infringement claims on invalid or narrowed patents." *See Ignite*, 2014 WL 2505166, at *4; *see also Trading Techs.*, 2016 WL 2622301, at *7 ("[G]iven that a good portion—and potentially each and every one—of the asserted patents may be under CBM review, the Court is well within its discretion to find a stay appropriate to lessen the burden of litigation.").

### C. A Stay Will Not Unduly Prejudice or Disadvantage T-Rex, a Non-Practicing Entity that Waited Years to Sue.

"[D]elay 'does not, by itself, establish undue prejudice. . . .'" *Trading Techs.*, 2016 WL 2622301, at *6 (quoting *Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013)); *Ignite*, 2014 WL 2505166, at *2. Whether a patentee will be unduly prejudiced by a stay "focuses on the patentee's need for an expeditious resolution of its claim." *VirtualAgility*, 759 F.3d at 1318.

---

[4] Granting a stay at this early stage in the case also comports with the Local Patent Rules because final contentions are not due for another four to five months. *See* N.D. Ill. Local Patent Rule 3.5 ("Absent exceptional circumstances, no party may file a motion to stay the lawsuit pending reexamination in the U.S. Patent Office after the due date for service of that party's Final Contentions.").

T Rex is a non-practicing entity that neither makes nor sells any products. Thus the parties are not competitors. A stay is not unduly prejudicial when the parties "are not competitors and, therefore, a monetary award will be able to rectify any harm" resulting from a delay. (Hanson Decl., Ex. H, *Rosetta-Wireless*, slip op. at 4); *see also VirtualAgility*, 759 F.3d at 1318 (reversing denial of stay pending CBMR where "there is no evidence in this record that the two companies ever competed for the same customer or contract"). Moreover, "numerous courts have held that non-practicing entities or non-competitors like Plaintiff here cannot show the type of prejudice necessary to deny a motion to stay." *Sweepstakes Patent Co. v. Burns*, No. 14-62351-CIV, 2015 WL 11197816, at *1 (S.D. Fla. Apr. 7, 2015); *see also Cascades*, 2012 WL 2086469, at *1 (granting stay pending *inter partes* reexamination when plaintiff "is a non-practicing entity" that "seeks only a monetary remedy" because if plaintiff "ultimately prevails, it will be able to collect damages . . . ameliorating the delay caused by the stay"); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-CV-1107 (GMS), 2014 WL 1369721, at *4 (D. Del. Apr. 7, 2014) ("The relationship between the parties is no impediment to a stay, however, where the plaintiff is a non-practicing entity."); *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015) (noting plaintiff "seeks exclusively monetary damages, and mere delay in collecting those damages does not constitute undue prejudice"); *SP Techs., LLC v. HTC Corp.*, No. 08 C 3760, 2009 WL 1285933, at *3 (N.D. Ill. May 6, 2009) ("[Plaintiff] is nothing more than a patent holding company . . . . [that] can always move to recover damages for such sales at the end of the litigation if [it] is successful on its claims.").

That T-Rex will not be unduly prejudiced by any delay is further evidenced by the fact that T-Rex did not seek a preliminary injunction—likely because T-Rex is a non-practicing

entity. A patentee's failure to seek a preliminary injunction is "particularly detrimental" to a claim that the patentee will suffer undue prejudice as a result of a stay. *Trading Techs.*, 2016 WL 2622301, at *7; *VirtualAgility*, 759 F.3d at 1319 (reversing denial of stay pending CBMR where "the fact that it was not worth the expense to ask for [a preliminary injunction] . . . . weigh[s] against VA's claims that it will be unduly prejudiced by a stay"); *Ignite*, 2014 WL 2505166, at *3.

Finally, any claim of undue prejudice that would result from a stay is directly contradicted by the fact that T-Rex waited at least eight years after the latest of the patents-in-suit issued before filing its lawsuit.[5] T-Rex's eight-year delay is fatal to any argument that it will suffer undue prejudice or be tactically disadvantaged by a stay. *VirtualAgility*, 759 F.3d at 1319 (reversing denial of stay pending CBMR where patentee "waited nearly a year after the ′413 patent issued before it filed suit against Defendants. . . . weigh[s] against VA's claims that it will be unduly prejudiced by a stay"); *Ignite*, 2014 WL 2505166, at *2 ("Ignite's own two-year delay, in filing this action, demonstrates that Ignite's concerns about potential delay are overblown."); *Trading Techs.*, 2016 WL 2622301, at *7 ("TT's allegations that it will suffer undue prejudice [from a stay pending CMBR] continue to be undermined by its . . . decision to bring this infringement action six to seven years after the Defendants released their accused technology."). T-Rex will not suffer any meaningful tactical disadvantage from a stay because Adaptive is moving to stay early in the litigation, almost immediately after the petitions for IPR and CBMR were filed. *See VirtualAgility*, 759 F.3d at 1319–20 (finding no "clear tactical advantage" nor

---

[5] The named defendant here—Adaptive Micro Systems, LLC—purchased assets out of receivership on August 12, 2011 and thus asserts it is not liable for any alleged infringement occurring before that purchase. (*See* Hanson Decl. ¶ 18.) Because the patents-in-suit had issued when Adaptive purchased the assets and began selling the accused products as Adaptive Micro Systems, LLC, T-Rex could have asserted its patents in August 2011, approximately five years before it did assert them. (*See* ECF No. 1, Compl. Ex. A, '470 patent (issued Jan. 16, 2007), Ex. B, '334 patent (issued June 3, 2008)).

"evidence that Defendants possessed a 'dilatory motive,' . . . [where Defendants] moved to stay the district court proceedings almost immediately after filing the [CBMR petition]"); *Ignite*, 2014 WL 2505166, at *2 ("The fact that PMI is seeking a stay at the earliest stage of the litigation diminishes the potential effect of any tactical disadvantage Ignite could face.").

## CONCLUSION

This case should be stayed. A stay of this litigation pending final written decisions from the PTAB in IPR2016-01869, IPR2017-00006, and CBM2017-00008, which challenge the validity of all the asserted claims of the patents-in-suit, would significantly simplify any remaining issues and conserve the parties' and Court's resources by eliminating or postponing expensive discovery that ultimately may be unnecessary or altered in light of the PTAB's decisions. T-Rex will not be unduly prejudiced or tactically disadvantaged by a stay because (1) discovery has barely begun, (2) the parties are not competitors, and (3) T-Rex delayed at least eight years in filing its lawsuit on two of the three patents-in-suit. For the foregoing reasons, Adaptive respectfully requests that the stay this litigation pending final written decisions in the IPRs and CBMR. Adaptive further requests a related and necessary immediate stay of discovery until the IPR and CBMR proceedings are resolved.

Dated this 11th day of November, 2016.

/s/ David G. Hanson
David G. Hanson
WI State Bar ID No. 1019486
dhanson@reinhartlaw.com
James M. Burrows
WI State Bar ID No. 1084705
jburrows@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
Willis Tower
233 South Wacker Drive, 94th Floor
Chicago, IL 50505
Telephone:  414-298-1000
Facsimile:  414-298-8097

*Attorneys for Defendant Adaptive Micro Systems, LLC*