IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| T-REX PROPERTY AB, | ) | No. 16 C 5667 |
| Plaintiff, | ) | Judge Virginia M. Kendall |
| v. | ) | |
| ADAPTIVE MICRO SYSTEMS, LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff T-Rex Property AB ("T-Rex") sued Defendant Adaptive Micro Systems, LLC ("Adaptive") alleging infringement of three patents related to controlling and coordinating digital information systems to multiple displays and devices. Following minimal discovery, Adaptive filed the instant motion seeking a stay of this case pursuant to Section 18(b) of the America Invents Act ("AIA") pending United States Patent Trial and Appeal Board's ("PTAB") review of the three patents. For the following reasons, Adaptive's Motion to Stay [28] is granted. The parties are ordered to file a status report with the Court within 24 hours of receipt of each of the PTAB's institution decisions.

**BACKGROUND**

T-Rex, a non-practicing entity, has filed at least 58 lawsuits, including this one, against various defendants alleging infringement of U.S. Patent Nos. RE39,470 (the "'470 Patent"); 7,382,334 (the "'334 Patent"); and 6,430,603 (the "'603 Patent") (collectively, the "Asserted Patents"). (*See* Dkt. No. 30 at 1-2.) BroadSign International, LLC ("Broadsign"), a defendant in a separate case, filed two petitions for *inter partes* review ("IPR") and one petition for covered business method review ("CBM") before the PTAB challenging the validity of the Asserted Patents. (*See* Dkt. No. 31-1 (IPR petition challenging '470 Patent); Dkt. No. 31-2 (IPR petition

challenging '334 Patent); Dkt. No. 31-3 (CBM petition challenging '603 Patent).)  The PTAB has not yet issued decisions regarding any of the petitions, but the decisions are due as follows:

| Petition | Date Filed | Latest Date for Institution Decision |
|---|---|---|
| IPR for '470 Patent | Sept. 24, 2016 | March 24, 2017 |
| IPR for '334 Patent | Oct. 6, 2016 | April 6, 2017 |
| CBM for '603 Patent | Oct. 28, 2016 | April 28, 2017 |

Following a hearing on November 21, 2016, the Court stayed discovery pending its ruling on the present motion.  (*See* Dkt. No. 35.)

## **LEGAL STANDARD**

Section 18 of the AIA provides for the establishment of transitional post-grant review proceedings to reexamine the validity of covered business method patents.  Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18, 125 Stat. 284 (Sept. 16, 2011).  The AIA also establishes protocol with respect to related patent infringement actions and authorizes the district courts to stay such parallel litigation under certain circumstances.  Specifically, Section 18(b)(1) states:

> If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on--
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.* The statutory test closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the PTAB. *See, e.g.*, *Genzyme Corp. v. Cobrek Pharm., Inc.*, No. 10 CV 00112, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011) (applying three-factor stay test that considers "whether a stay will (1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in questions and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court"); *JAB Distribs., LLC v. London Luxury, LLC*, No. 09 C 5831, 2010 WL 1882010, at *1 (N.D. Ill. May 11, 2010).

The fourth factor was included, in part, to favor the granting of stays. *See, e.g.*, *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 480 (E.D. Va. 2014) (fourth factor "designed to place a thumb on the scales in favor of a stay"); *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013) (fourth factor included "to ease the movant's task of demonstrating the need for a stay"). Finally, as the movant, Adaptive bears the burden of demonstrating that a stay is warranted. *See, e.g., Segin*, 30 F. Supp. 3d at 479.

## DISCUSSION

Adaptive argues that a stay is appropriate because the PTAB's review of the patents will streamline the case and simplify the issues before the Court. T-Rex counters that Adaptive's motion is premature and that it will be prejudiced by a stay.

### A. Simplification of the Issues

Staying a patent infringement case pending administrative review of the asserted patents' validity can simplify litigation in several ways:

> 1. All prior art presented to the Court will have been first considered by an expert PTO examiner;
> 2. The reexamination may alleviate discovery problems relating to the prior art;

3

> 3. The suit will likely be dismissed if the reexamination results in effective invalidity of the patent;
> 4. The outcome of the reexamination may encourage settlement;
> 5. The record of the reexamination would likely be entered at trial and thus reduce the complexity and length of the litigation;
> 6. The reexamination will facilitate limitation of issues, defenses, and evidence in pre-trial conferences;
> 7. Litigation costs to the parties and the Court will likely be reduced.

*Genzyme*, 2011 WL 686807, at 3-4 (quoting *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at 2 (N.D. Ill. Feb. 2, 1987); *see also, e.g.*, *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004) (stay warranted because "[t]here is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope [due to reexamination] . . . [creating] a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings").

Adaptive argues that a stay is appropriate pending the PTAB's institution decisions as all three Asserted Patents and every asserted claim may be under review by the end of April, just over three months away. The fact that some, if not every, asserted claim may be under review in such a short time period of time weighs in favor of granting a stay. *See, e.g, Versata Software, Inc. v. Dorado Software, Inc.*, No. 2:13-cv-00920-MCE-DAD, 2014 WL 1330652, at *3 n.2 (E.D. Cal. Mar. 27, 2014) (staying case where CBM review granted for only one of three asserted patents); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 769 (E.D. Pa. 2014) ("courts have found significant potential for issue simplification even in cases where some but not all of the asserted claims are subject to PTO review"); *Genzyme*, 2011 WL 686807, at *3 (stay warranted even though "certain issues may remain in dispute even upon conclusion of the reexamination proceedings"). Given the Court's inherent ability to stay cases even before the

PTAB acts, *see Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1378-79 (Fed. Cir. 2015) ("our holding does not prevent a district court from choosing to decide a motion before the PTAB acts on a CBMR petition."), and the upcoming deadlines for determinations, the first factor weighs in favor granting the stay.

T-Rex, however, argues that Adaptive's motion is (1) premature and speculative because none of the reviews have actually been instituted and (2) inappropriate because "[t]he only circumstance in which the issues…will be substantially simplified is if the PTAB initiates review of all of the asserted claims and then invalidates all of the asserted claims of the" Asserted Patents. (Dkt. No. 36 at 9.) While it is certainly true that merely filing a petition for CBM or IPR review does not ensure that a review will in fact follow (or that even if a review were to follow, the patent would be found invalid), it is equally the case that the burden on the Court and the parties would be significantly lessened if any (or all) of these petitions led to IPR or CBM institutions.[1] *Versata*, 2014 WL 1330652, at *2. The fact that the PTAB has not yet rendered institution decisions does not eliminate the benefits of a stay. For example, if the PTAB institutes review proceedings, staying the case avoids duplicitous litigation on potentially moot claims and issues. *See VirtualAgility*, 759 F.3d at 1314 (disposing of the entire litigation is "the ultimate simplification of issues"); *see also, e.g.*, *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 548 (Fed. Cir. 2011) ("PTO has acknowledged expertise in evaluating prior art and assessing patent validity"); *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL

---

[1] T-Rex also argues that the PTAB is unlikely to institute a review of the '603 Patent because Broadsign's petition for review cited to the PTAB decision that Federal Circuit overturned in *Unwired Planet L.L.C. v. Google, Inc.*, No. 2015-1966, 2016 WL 6832982 (Fed. Cir. Nov. 21, 2016). (*See* Dkt. No. 36 at 4.) Even if T-Rex's argument is correct – Adaptive noticeably does not dispute the substance of T-Rex's position in its Reply – a stay is nevertheless appropriate because the PTAB may still institute reviews of the other two Asserted Patents. *See, e.g., Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870 (N.D. Ill. 2016), *aff'd sub nom. Trading Techs. Int'l, Inc. v. Rosenthal Collins Grp., LLC*, No. 2016-2223, 2016 WL 5899197 (Fed. Cir. Oct. 11, 2016) (collecting cases supporting proposition that a stay is appropriate where only some claims or patents are under review).

144255, at *4 (D. Del. Jan. 11, 2013) (courts benefit from the PTO's analysis of prior art that is later presented in litigation regardless of the outcome of the review).

T-Rex's reliance on *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *7 (E.D. Tex. Mar. 11, 2015) is misplaced. Although that court held that a stay prior to PTAB action was inappropriate, it noted, through analyzing *Landmark Technology, LLC v. iRobot Corp.*, No. 6:13–cv–411, 2014 WL 486836 (E.D.Tex. Jan. 24, 2014), that a stay could be appropriate where (1) "the PTAB was due to decide whether to grant the CBM review petition within four months" of the court ruling on the stay motion, (2) discovery had just began, and (3) the claim construction hearing was not scheduled to occur until four months after the PTAB's decision was due. *See, e.g., Trover*, 2015 WL 1069179, at *6. Those considerations mirror the situation here as the PTAB's decisions are due in less than four months from the time of this Order, discovery has only just begun (only one set of initial disclosures and initial contentions have been exchanged, *see* Dkt. No. 39 at 12:12-15), and a claim construction hearing date has not been set (the parties' claim construction briefing does not even begin until May 25, 2017, *see* Dkt. No. 26). As such, despite T-Rex's contentions to the contrary, the *Trover* court's analysis supports the granting of a stay.

  **B.**  **Stage of the Litigation**

"Staying a case at an early juncture can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *See, e.g., Trading Techs. Int'l*, 2015 WL 1396632, at *4 (citations omitted). As detailed in Adaptive's Motion, no depositions have been taken or noticed, initial disclosures were recently issued, final contentions are not due for four more months, and no trial date has been set. (*See* Dkt. No. 30 at 7); *VirtualAgility*, 759 F.3d at 1317 (the stage of litigation factor

6

favored stay where no trial date had been set, fact discovery had yet to be completed, and claim construction statements had yet to be filed); *Versata*, 2014 WL 1330652, at *3 (factor supported stay in part because neither a *Markman* claim construction nor a trial date had been set). T-Rex does not dispute this factor. (*See* Dkt. No. 36; Dkt. No. 38 at 2.) Accordingly, the early stage of the litigation favors a stay.

C. **Undue Prejudice or Tactical Advantage**

"When assessing the third factor in determining whether to grant a stay pending CBM review, courts consider a variety of factors to determine the prejudice to the non-movant, including the timing of the stay request, the status of review proceedings, and the relationship between the parties." *Trading Techs.*, 2015 WL 1396632, at *5. Although the potential for delay "does not, by itself, establish *undue* prejudice," the Court recognizes "that waiting for the administrative process to run its course risks prolonging the final resolution of the dispute and thus may result in some inherent prejudice to the plaintiff." *See, e.g., Mkt.-Alerts*, 922 F. Supp. 2d at 494 (emphasis in original). A review of the above factors shows that a stay is appropriate in this case as (1) Adaptive filed the Motion two weeks after Broadsign filed the last of its petitions, (2) decisions regarding the petitions are due in only three months, and (3) the parties are not competitors such that a delay will unduly prejudice T-Rex. *Cf. VirtualAgility*, 759 F.3d at 1318 ("competition between parties can weigh in favor of finding undue prejudice"); *see also CANVS Corp. v. United States*, 118 Fed. Cl. 587, 596 (2014) ("Weighing in favor of stay here is the fact that the parties are not direct competitors.").

T-Rex argues both that it will be unduly prejudiced by a stay and that Adaptive is seeking the stay to gain a tactical advantage. T-Rex first contends that it will be unduly prejudiced because a stay will delay its ability to timely enforce its patent rights. Specifically, T-Rex argues

7

that because the '470 and '334 Patents are expired, it will only be permitted to recover for any infringement for a period of six years under 35 U.S.C. § 286. Based on that limited time period, T-Rex argues that any delay in this case will not only curtail its ability to recover damages here, but also will cause it to lose damages from "yet-to-be served defendants" because it will not have the capital to initiate lawsuits against those other defendants if this case is stayed. (*See* Dkt. No. 36 at 7-8.) There are numerous issues with this position. First, as noted above, delay within itself does not establish undue prejudice, particularly where the delay is for a short period of time. *See, e.g., Mkt.-Alerts*, 922 F. Supp. 2d at 494; *Black & Decker Inc. v. Positec USA, Inc.*, No. 13 C 3075, 2013 WL 5718460, at *2 (N.D. Ill. Oct. 1, 2013) ("And should the PTO deny review, the delay in waiting for that decision will be fairly short. Delay in itself, moreover, does not constitute undue prejudice.") (citation omitted). Second, T-Rex does not dispute that it is a non-practicing entity and that it only seeks monetary remedy. *See, e.g., Cascades Computer Innovation, LLC v. SK hynix Inc.*, No. 11 C 4356, 2012 WL 2086469, at *1 (N.D. Ill. May 25, 2012) (granting stay in part because defendant, as a non-practicing entity seeking only monetary damages, would be able to "collect damages that accumulate during the stay, including interest, ameliorating the delay caused by the stay" if the defendant ultimately prevailed.) Third, T-Rex's contention that it will lose prospective damages against other, unnamed defendants in future cases is both speculative and wholly unsupported. T-Rex fails to set forth any case law or other authority, and the Court has found none, supporting its contention that a stay in *this* case should be denied so that it will be able to pursue other, future cases against unnamed third party defendants. Indeed, if the Court were to credit such an argument, it is difficult to imagine any circumstance in which a stay in any case could be warranted. Even if the Court were to consider T-Rex's position tenable from a legal or policy perspective, from a factual standpoint, T-Rex

fails to provide any documentation showing that it is incapable of financing other lawsuits in the event that this case is stayed, particularly given that it has already filed some 58 other lawsuits. (*See* Dkt. No. 36 at 9 (T-Rex itself indicating that it has filed "over 50 lawsuits.")). Finally, T-Rex's failure to seek a preliminary injunction severely undermines its claim of undue prejudice. *See, e.g., Trading Techs.*, 186 F. Supp. 3d 870, at *7 (collecting cases indicating that claims of undue prejudice are belied by a plaintiff's failure to seek a preliminary injunction).

T-Rex's argument that a stay would tactically advantage Adaptive is similarly flawed. The crux of T-Rex's position, laid out in one short paragraph at the very beginning of its Response, is that because Adaptive did not "agree to be estopped from presenting invalidity arguments that Broadsign raised or could have raised in the event the IPRs and CBM do not reach a final determination," Adaptive could unfairly get to "two chances to argue the same invalidity positions." (Dkt. No. 36 at 1.) Yet again, T-Rex fails to cite to any authority indicating that Adaptive should be barred from raising the same issues raised in the petitions in the situation where the petitions do not reach a final determination. If this Court institutes a stay and Broadsign subsequently withdraws its petitions prior to a final determination by the PTAB, Adaptive would then raise those invalidity positions before this Court for the first time. On the other hand, if the petitions do reach a final determination and the patents are found to survive the PTAB's review, Adaptive will be barred from relitigating those determinations here. Adaptive acknowledged as much during the parties' hearing on November 21, 2016, when its counsel twice represented that "[w]e're going to live and die with Broadsign." (Dkt. No. 39 at 16:12-15.)

### D. Burden of Litigation

The fourth factor is "designed to place a thumb on the scales in favor of a stay…[and] will usually weigh to some degree in favor of stay." *See, e.g., Segin Sys.*, 30 F. Supp. 3d at 480.

Much of the analysis conducted under the first factor is relevant here as the burden of litigation will be significantly lessened if the PTAB institutes and invalidates any or all of the Asserted Patents. The parties briefing regarding which will suffer a more significant burden if the case is stayed does not affect the requisite analysis in any substantial way. For example, T-Rex requests that the Court allow "minimal fact discovery" to go forward without explaining why that discovery is necessary immediately rather than four months from now if the PTAB declines to review the Asserted Patents. (*See* Dkt. No. 36 at 12.) On the other hand, Adaptive argues that the burden of the litigation is substantial for it because it is a small company, but does not provide any factual basis for that claim. (Dkt. No. 38 at 4.) As such, this factor similarly weighs in support of granting a stay.

## CONCLUSION

For the reasons stated herein, Adaptive's Motion to Stay [28] is granted. The parties are ordered to file a status report with the Court within 24 hours of receipt of each of the PTAB's institution decisions.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 1/26/2017